SAMUEL J. FANTASIA *v.* MILFORD FASTENING
SYSTEMS ET AL.
(AC 24735)

Schaller, Flynn and Peters, Js.

---

Argued September 10—officially released November 30, 2004

*Brenden P. Leydon,* with whom, on the brief, was *Victor M. Ferrante,* for the appellant (plaintiff).

*Robert J. Enright,* for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Samuel J. Fantasia, appeals from the decision of the workers' compensation review board (board) affirming the articulation of finding and award by the workers' compensation commissioner for the fourth district (commissioner). On appeal, the plaintiff claims that the board improperly (1) remanded the case to the commissioner for an articulation of his November 16, 2000 findings, (2) accepted the commissioner's September 16, 2002 articulation and (3) failed to remand the case to a different commissioner after the September 16, 2002 articulation.[1] We reverse the decision of the board and remand the case to the board with an order to remand the case to a different commissioner.

The following facts and procedural history are relevant to this appeal. The plaintiff suffered a back injury on October 13, 1994, while working as a material handler for the named defendant, Milford Fastening Systems. A magnetic resonance imaging report dated December 20, 1994, showed that the plaintiff had a herniated lumbar disc. The plaintiff received temporary total disability benefits through July 10, 1995, when the workers' compensation commissioner approved a form 36 submitted by the named defendant and its insurer, the defendant Wausau Insurance Company, which allowed them to discontinue the temporary total disabil-

---

[1] The plaintiff also claims that the board improperly affirmed the commissioner's September 16, 2002 finding of a specific period of temporary total disability. Because we order the board to remand the case to a new commissioner regarding that issue, we need not address that claim.

ity benefits.[2] The plaintiff disputed the discontinuance of those benefits. The plaintiff received temporary partial benefits from July 11, 1995, through April 29, 1996.

Between 1994 and 2000, several physicians examined and treated the plaintiff in connection with his back condition and his workers' compensation claims. There were differing views among the physicians regarding the plaintiff's ability to work, his suitability for surgery and the recommended treatment and prognosis. On February 10, 1995, Enzo J. Sella, an orthopedic surgeon, issued an independent medical examiner's report stating that it "is medically reasonable to assume that the [plaintiff's] herniated disc" was caused by his work. Instead of surgery, Sella recommended that the plaintiff "be rehabilitated, train for a different kind of job . . . and eventually obtain a more sedentary and light duty type of job."

On October 26, 1995, after performing a commissioner's examination, William H. Druckemiller, a neurosurgeon, issued a report giving the following opinion: "Diagnosis is herniated lumbar disc secondary to work-related injury of October 1994. Surgery is indicated and recommended. He is restricted. He is temporarily totally disabled at this point in time until he has such surgery. I would expect approximately a 10 [percent] permanent partial impairment of the lumbar spine following surgery and a normal post-operative recovery." On October 28, 1995, the plaintiff suffered a myocardial infarction for which he received extensive medical treatment. The plaintiff's heart condition complicated treatment of his

---

[2] "Form 36 is a notice to the compensation commissioner and the claimant of the intention of the employer and its insurer to discontinue compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue payments. General Statutes §§ 31-296, 31-296a, 31-300." (Internal quotation marks omitted.) *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 720 n.2, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A. 2d 132 (2003).

back injury and categorization of his disability. On March 30, 1999, the commissioner approved a specific voluntary agreement between the parties regarding the plaintiff's permanent partial disability. The agreement stated that the plaintiff had a 10 percent permanent partial disability of the back. The agreement also stated that the maximum medical improvement date was February 13, 1996.

In a report dated August 16, 1999, Michael Karnasiewicz, a neurosurgeon, who performed an independent medical examination, stated that while the plaintiff "has a 10 percent permanent partial disability of the spine" and was unable to return to his old work, he "is capable of sedentary work within the confines of his cardiac condition" and "will significantly improve." On May 8, 2000, a formal hearing was held, and on November 16, 2000, the commissioner issued a "Finding and Award In Part and Finding and Dismissal in Part." The commissioner framed the plaintiff's claims as follows: (1) a claim for temporary total disability benefits from January 6, 1995, to the present; (2) a motion to open the specific voluntary agreement that was approved on March 30, 1999; and (3) a claim that approval of the form 36 on July 10, 1995, was incorrect and must be overturned.

The commissioner restated the hearing evidence and reported his findings and conclusions, which included the following: "I find Dr. Enzo Sella's report of February 10, 1995 credible and persuasive as to the [plaintiff's] ability to perform light, sedentary work and/or retraining." The commissioner stated that "I also find Dr. Druckemiller's report of October 27, 1995, credible and persuasive as to the fact that the [plaintiff] was temporarily totally disabled due to his compensable injury as of October 27, 1995." The commissioner further found Karnasiewicz's August 16, 1999, report stating that the plaintiff was not totally disabled, to be credible and

persuasive. The commissioner also found that the parties "both had in their possession conflicting evidence as to the [plaintiff's] back condition," including the February 27, 1998 report by Michael Opalak, a neurosurgeon, which stated that the plaintiff's postmyelogram was "perfectly normal" and showed no abnormalities in the plaintiff's injured disc.

The commissioner found that the plaintiff was entitled to temporary partial disability benefits from July 11, 1995, through April 29, 1996. The commissioner, however, denied the plaintiff's request for temporary total disability benefits. In addition, the commissioner found that the approval of form 36 on July 10, 1995, which discontinued the plaintiff's temporary total disability benefits, was correct and declined to overturn it. The commissioner also denied the motion to open the specific voluntary agreement for permanent partial disability benefits, concluding that the plaintiff had not met his burden.

On December 11, 2000, the plaintiff filed a motion to correct, requesting a temporary total disability award benefit for the period commencing on October 27, 1995, which was the date of the report stating that the plaintiff was temporarily totally disabled. The commissioner denied the motion in its entirety on the same day. On December 21, 2000, the plaintiff appealed to the board, challenging both the November 16, 2000 finding and award and the December 11, 2000 denial of the motion to correct. The plaintiff argued that the commissioner improperly failed to award a temporary total disability benefit despite accepting, as credible and persuasive, Druckemiller's October 27, 1995 report stating that he was temporarily totally disabled. The plaintiff also claimed that the temporary total disability period should commence on October 27, 1995, and suggested three potential ending dates for the temporary total disability period.

On January 15, 2002, the board agreed that the commissioner's findings appeared to be inconsistent and remanded the matter to the commissioner for an articulation. *Fantasia* v. *Milford Fastening Systems*, No. 4332, CRB-4-00-12 (January 15, 2002). The board explained that "[d]espite finding Dr. Druckemiller's opinion that the claimant was temporarily totally disabled to be credible and persuasive, the trier did not award temporary total disability benefits. Accordingly, we must remand this matter to the trial commissioner for an articulation of the apparent discrepancy between his denial of temporary total disability benefits and his acceptance of Dr. Druckemiller's opinion that the claimant was temporarily disabled due to his compensable injury."

On September 16, 2002, the commissioner issued an "Articulation of Finding and Award," stating that "[i]n following [the] direction of the compensation review board, I articulate the following as to the November 16, 2000 finding . . . . I awarded [the plaintiff], in the finding of November 16, 2000, temporary total disability benefits from October 27, 1995, until [maximum medical improvement] is reached, or until February 13, 1996." The commissioner also referenced several of his previous findings, apparently in order to clarify that he had found February 13, 1996, to be the date of maximum medical improvement because it was the date of maximum medical improvement stated in the specific voluntary agreement signed by the parties.

On September 25, 2002, the plaintiff filed a motion to correct the articulation, which was denied the next day. On October 2, 2002, the plaintiff filed an appeal to the board. The plaintiff argued that the articulation was inconsistent with the board's remand order and that the commissioner improperly found that the temporary total disability period ended on February 13, 1996. The plaintiff argued that the commissioner should have

awarded temporary total disability benefits either "up to the time of trial and continuing," up to the August 16, 1999 report that stated that the plaintiff was not totally disabled, or up to the February 27, 1998 report finding that the myelogram showed no abnormalities in the plaintiff's injured disc.

The board affirmed the commissioner's September 16, 2002 articulation of the finding and award dated November 16, 2000. The board concluded that the commissioner had complied with its remand order, explaining that it had "remanded the matter back to the trial commissioner for an articulation as to the contradiction between the trier's finding [of the plaintiff's temporary total disability] and his failure to award temporary total disability benefits."

The board also stated that "[t]he ultimate issue presented by this appeal is whether the trial commissioner erred in limiting his award of temporary total [disability benefits] from October 27, 1995, until February 13, 1996, and not a time beyond that period." The board characterized the plaintiff's appeal as challenging the evidentiary foundation of the commissioner's decision to adopt February 13, 1996, as the end date for the temporary total disability period, because that date was not supported by medical evidence. The board, however, noted that the date of February 13, 1996, had been stated as the maximum medical improvement date in the parties' voluntary agreement. The board concluded that "the period of time to which the [plaintiff] was entitled to temporary total benefits is a factual determination to be made by the trial commissioner." The board affirmed the commissioner's articulation, which contained his new finding that the claimant was entitled to temporary total disability benefits from October 27, 1995, until February 13, 1996. This appeal followed.

I

The plaintiff first claims that the board improperly remanded the case to the commissioner for an articulation of his November 16, 2000 finding.[3] Specifically, the plaintiff argues that because the commissioner failed to explain adequately his seemingly inconsistent findings, the board was "obligated to reverse entirely" and "remand to a new commissioner." The defendants counter that the board appropriately exercised its discretion to remand for articulation, since the commissioner's findings were susceptible of clarification. We agree with the defendants.

Before discussing this claim, we identify the applicable standard of review: "Whether a case should be remanded, and the scope of that remand, presents questions to be determined by the compensation review board in the exercise of its sound discretion." *Schick* v. *Windsor Airmotive Division/Barnes Group, Inc.*, 34 Conn. App. 673, 675, 643 A.2d 286 (1994) (resolving claim that board improperly remanded and improperly refused to designate substitute commissioner). The actions of the board will not be disturbed unless the board has abused its broad discretion. Id.

[3] The defendants argue that the plaintiff failed to preserve his claim because he "did not object to the remand for articulation." The plaintiff counters that he preserved the claim by arguing for a "reversal and direction" rather than for a remand for articulation in his brief to the board on May 17, 2001. The plaintiff also argues that he had no further opportunity to contest the remand for articulation because such a remand order is not a final judgment. We agree with the plaintiff that the claim has been properly preserved. The defendants also make several assertions regarding that claim, including that the plaintiff waived the claim by filing a motion to correct the commissioner's articulation, thereby "implicitly" endorsing the board's remand for articulation. We decline to address those arguments because they have not been briefed adequately. "We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quotation marks omitted.) *Jellison* v. *O'Connell*, 73 Conn. App. 564, 565–66, 808 A.2d 752 (2002).

The workers' compensation system is derived exclusively from statute. As such, the commissioner and the board "must act strictly within [their] statutory authority . . . ." (Internal quotation marks omitted.) *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 160, 740 A.2d 796 (1999). Neither tribunal may "modify, abridge, or otherwise change the statutory provisions under which it acquires authority . . . ." (Internal quotation marks omitted.) Id. The legislature has expressly conferred upon the board the authority to review decisions made by the commissioner. General Statutes § 31-280b (b) provides in relevant part that "[t]he board shall review appeals of decisions made by compensation commissioners . . . ." General Statutes § 31-301 (c) provides in relevant part that on hearing the appeal, the board "shall issue its decision, affirming, modifying or reversing the decision of the commissioner. . . ."

The legislature also has conferred on the board the authority to use the same procedures as other appellate tribunals where applicable. General Statutes § 31-301(e) provides in relevant part that "[t]he procedure in appealing from an award of the commissioner shall be the same as the procedure employed in an appeal from the Superior Court to the Supreme Court, where applicable. . . ." One procedure available to appellate tribunals is a remand to the lower body for articulation of its decision. Practice Book § 60-5 provides in relevant part that "[i]f the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision. . . ."

A review of our case law bolsters the view that the board has the statutory authority to remand a case to the commissioner for articulation. "The standard applicable to the board when reviewing a commissioner's decision is well established. The board sits as an appellate tribunal reviewing the decision of the commis-

sioner." *Paternostro* v. *Arborio Corp.*, 56 Conn. App. 215, 218, 742 A.2d 409 (1999), cert. denied, 252 Conn. 928, 746 A.2d 788 (2000). "It is . . . implicit in the [board's] statutory authority to reverse a decision of the trial commissioner that the board may remand a case . . . . The power of [the board's] appellate review necessarily encompasses the power to remand a case in which error is found." (Citation omitted.) *Cantoni* v. *Xerox Corp.*, supra, 251 Conn. 163.

"In workers' compensation cases, motions [for articulation] are granted when the basis of the commissioner's conclusion is unclear." (Internal quotation marks omitted.) *Cable* v. *Bic Corp.*, 270 Conn. 433, 445, 854 A.2d 1057 (2004). When a commissioner's findings are too ambiguous to serve as a basis for appellate review, it may be appropriate for the reviewing court to remand the case to the commissioner for further articulation.[4] See *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 798, 694 A.2d 1230 (1997); see also *Conetta* v. *Stamford*, 246 Conn. 281, 287, 715 A.2d 756 (1998) (stating that "on the basis of its determination that there was a paucity of factual findings to support the commissioner's dismissal, the review board remanded the matter to the commissioner [and] ordered the commissioner to articulate the legal bases of her decision").

---

[4] Although the customary practice of the board is not a definitive indication of the boundaries of its statutory authority, it should be noted that the board routinely has remanded cases to the commissioner for articulation when the commissioner's findings appeared to be inherently inconsistent. See *Ortiz* v. *Highland Sanitation*, No. 4439 CRB-4-01-9 (November 12, 2002) ("[w]e have held that, where the findings of a trial commissioner appear to be inherently inconsistent amongst themselves, or with the trier's conclusions, the correct approach is to remand the matter [to the commissioner] for clarification"); *Krajewski* v. *Atlantic Machine Tool Works, Inc.*, No. 4500, CRB-6-02-3 (March 7, 2003) (affirming in part and remanding one issue "solely for an articulation of the basis of the [commissioner's] decision to dismiss [the] claim"); see also A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2002) § 10.85.2, p. 1453. ("where the facts found are inconsistent with the Workers' Compensation Commissioner's conclusions, the [board] will remand the matter back to the [commissioner]").

In this case, the plaintiff claims that it was improper for the board to remand the case for an articulation. Specifically, the plaintiff argues that the board was obligated to reverse the commissioner's November 16, 2000 finding and remand the case to a new commissioner since the original commissioner failed to explain inconsistent findings on a crucial issue. The plaintiff submits that *State* v. *Wilson*, 199 Conn. 417, 513 A.2d 620 (1986), and *Koper* v. *Koper*, 17 Conn. App. 480, 553 A.2d 1162 (1989), obligated the board to reverse the finding and award entirely and to remand the case to a new commissioner when the case was first before the board.

In *Wilson*, the trial court responded to a motion for articulation by amending a written memorandum that was inconsistent with an oral ruling regarding whether the defendant had made a request for counsel. *State* v. *Wilson*, supra, 199 Conn. 429–33. Our Supreme Court concluded that the trial court was without jurisdiction to amend matters of substance in its original memorandum more than four months after sentence had been imposed and ordered the amended memorandum stricken. Id., 438. Because it was unable to choose between the remaining inconsistent written and oral decisions, our Supreme Court remanded the case for a new trial. Id., 446.

In *Koper*, after we ordered an articulation, the trial court shifted its position regarding the basis of its previous financial orders by issuing an articulation that sharply contradicted its original memorandum of decision. *Koper* v. *Koper*, supra, 17 Conn. App. 484. This court stated that "[w]e are unable to discern whether the original memorandum or the articulation, if either, correctly represents a proper resolution of this case. Moreover, any effort on our part to resolve this conflict would put us in the untenable position of retrying the facts. . . . Under these circumstances the only remedy is a new trial." (Citation omitted.) Id.

Thus, *Wilson* and *Koper* address problems that can occur *after* the trial court issues an articulation in which the court fails to explain inconsistent decisions. Neither case, however, prevents a court from exercising its authority to remand a case for an articulation in the first instance. Setting aside the question of whether the board should have remanded the case to a new commissioner after the September 16, 2002 articulation failed to explain the previous inconsistent findings, which is the plaintiff's third claim on appeal, it is clear that the board was not required to remand the case to a new commissioner when it first heard it.

As discussed, the board has the authority to remand a case to a commissioner for an articulation. "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 204, 819 A.2d 227 (2003). In this case, the board exercised its authority and remanded the case to the commissioner for an articulation because the commissioner's November 16, 2000 finding denied an award for temporary total disability benefits while also finding that the plaintiff had been temporarily totally disabled. Because those inconsistent findings were ambiguous and reasonably susceptible of clarification, the board appropriately remanded the matter for an articulation. We conclude, therefore, that the board acted well within its broad discretion when it remanded the case to the commissioner for an articulation.

II

The plaintiff next claims that the board improperly accepted the commissioner's September 16, 2002 articulation of finding and award. The plaintiff points out that the articulation, titled "Articulation of Finding and

Award," amounted to a substitution and not an explanation of the November 16, 2000 "Finding and Award in Part and Finding and Dismissal in Part." Because the commissioner failed to comply with the board's remand order directing the commissioner to provide an articulation of his inconsistent findings regarding temporary total disability, the plaintiff argues that the board should have reversed the articulation. The defendants counter that acceptance of the articulation was proper because the commissioner followed the board's mandate to resolve the discrepancy between the inconsistent findings. We agree with the plaintiff that the board's acceptance of the commissioner's articulation was improper because the commissioner did not comply with the board's remand order.

Before discussing the plaintiff's claim, we set forth the applicable standard of review. The board's decisions on whether to remand a case and its decisions regarding the scope of a remand will not be disturbed unless the board has abused its broad discretion. *Schick* v. *Windsor Airmotive Division/Barnes Group, Inc.*, supra, 34 Conn. App. 675. "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, supra, 263 Conn. 204. "An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear." (Citations omitted.) *State* v. *Wilson*, supra, 199 Conn. 434. The purpose of an articulation is "to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, supra, 204.

"An articulation is not an opportunity for a trial court to substitute a new decision nor to change the reasoning or basis of a prior decision." *Koper* v. *Koper*, supra, 17 Conn. App. 484. "[A] trial court may not alter its initial findings by way of a further articulation . . . ." (Citation omitted.) *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 458, 582 A.2d 182 (1990). "[W]hen a case is remanded . . . the trial court's jurisdiction and duties are limited to the scope of the order. . . . The trial court should not deviate from the directive of the remand." (Internal quotation marks omitted.) *Matey* v. *Estate of Dember*, 85 Conn. App. 198, 206, 856 A.2d 511 (2004); see also 5 Am. Jur. 2d, Appellate Review 453 § 784 (1995) (lower court vested with jurisdiction only to extent conferred by higher court's opinion, mandate). "It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning." (Internal quotation marks omitted.) *Matey* v. *Estate of Dember*, supra, 205. "No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed." (Internal quotation marks omitted.) *Halpern* v. *Board of Education*, 231 Conn. 308, 311, 649 A.2d 534 (1994).

In this case, the board remanded the case to the commissioner "for an articulation of the apparent discrepancy between his denial of temporary total disability benefits and his acceptance of [the] opinion that the claimant was temporarily disabled due to his compensable injury." *Fantasia* v. *Milford Fastening Systems*, No. 4332 CRB-4-00-12 (January 15, 2002). The board did *not*, however, order the commissioner to substitute or to modify his previous findings, nor did the board order the commissioner to make a new finding on the period of temporary total disability, nor did the board order the commissioner to award any benefits. The board

instructed the commissioner merely to explain his prior inconsistent findings.

In his September 16, 2002 "Articulation of Finding and Award," the commissioner failed to follow the board's order for articulation, and instead issued a new finding regarding the total temporary disability benefits and made a new award for benefits. By failing to supply an explanation of the reasoning behind his previous inconsistent findings, the commissioner departed from the board's order for articulation. Instead, the commissioner substituted new findings for his previous findings. The commissioner stated, "I articulate the following as to the November 16, 2000 finding . . . I awarded [the plaintiff] . . . temporary total benefits from October 27, 1995 . . . until February 13, 1996." Because the previous finding, however, had explicitly *denied* total temporary benefits, it is clear that the commissioner used the articulation as an opportunity to substitute a new decision.

In its September 30, 2003 decision affirming the commissioner's articulation, the board concluded that the commissioner had "complied with this board's remand order . . . ." In light of the foregoing discussion, however, we conclude that the commissioner failed to comply with the board's remand order. It was improper for the board to have accepted the articulation. Although the board sometimes remands cases to a commissioner with orders to make specific findings or to conduct further proceedings, the commissioner in this case was limited to the specific direction given in the remand. Accordingly, the board's decision accepting the commissioner's September 16, 2002 articulation must be reversed.

### III

The plaintiff next claims that the board improperly failed to remand the case to a different commissioner

after the September 16, 2002 articulation. The plaintiff argues that the articulation left the board with no basis for deciding which set of findings regarding the temporary total disability benefits was correct without retrying the facts. Under those circumstances, the plaintiff argues, the board should have reversed the findings regarding the temporary total disability benefits and remanded the matter for rehearing before a different commissioner. We agree.

Before discussing the plaintiff's claim, we set forth the applicable standard of review. The board's decisions on whether to remand a case and its decisions regarding the scope of a remand will not be disturbed unless the board has abused its broad discretion. *Schick* v. *Windsor Airmotive Division/Barnes Group, Inc.*, supra, 34 Conn. App. 675. "Neither the review board nor this court has the power to retry facts." (Internal quotation marks omitted.) *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 770, 770 A.2d 1 (2001). "[T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts." (Internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 51 Conn. App. 523, 526–27, 723 A.2d 1161 (1999), aff'd, 252 Conn. 261, 746 A.2d 743 (2000). Although the board may not retry facts or substitute its conclusions, as the reviewing court, it has the "obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. . . . When conclusions drawn by the commissioner result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them, the authority to reject such conclusions is well established." (Citation omitted; internal quotation marks omitted.) *Safford*

v. *Owens Brockway,* 262 Conn. 526, 534, 816 A.2d 556 (2003).

When the resolution of an appeal would result in retrying the facts, it is proper to set aside the judgment and order a new trial. See *Koper* v. *Koper,* supra, 17 Conn. App. 484. In *Koper,* in which the trial court's articulation sharply contradicted its original memorandum of decision, we stated that "[w]e are unable to discern whether the original memorandum or the articulation, if either, correctly represents a proper resolution of this case. Moreover, any effort on our part to resolve this conflict would put us in the untenable position of *retrying the facts.* . . . Under these circumstances the only remedy is a new trial." (Citation omitted; emphasis added.) Id. Similarly, in *Wilson,* after our Supreme Court concluded that the trial court's articulation was improper, it remanded the case for a new trial because it was unable to choose between the remaining inconsistent written and oral decisions. *State* v. *Wilson,* supra, 199 Conn. 445–46.

In *Cantoni,* our Supreme Court did not need to decide whether the decision to remand a case for rehearing before a new commissioner was an appropriate exercise of the board's statutory authority because it held that the decision did not raise a colorable claim of jurisdiction and, thus, was not an appealable final judgment. *Cantoni* v. *Xerox Corp.,* supra, 251 Conn. 168. In addressing the final judgment issue, however, the court stated that it is "implicit in the statutory authority to reverse a decision of the trial commissioner that the board may remand a case for a new hearing. . . . The power of appellate review necessarily encompasses the power to remand a case in which error is found." (Citation omitted.) Id., 163. The court also stated that "[n]othing in the statute defining the appellate power of the review board specifically addresses the board's authority to direct that a new hearing be held if a trial commis-

sioner's decision is reversible." Id. The court found neither an express prohibition, nor any express authority in the statutes regarding the board's authority to remand to a new commissioner and concluded that the remand decision in the case did not raise a jurisdictional issue. Id., 166–67.

The court added that "[i]n light of the broad authority conferred upon the review board by the terms of § 31-301 (c), we are not persuaded that the legislature intended to impose unstated limitations on the review board's discretion to order . . . new hearings. Such an unstated limitation would be difficult to reconcile with the provisions of General Statutes § 51-183c, which provides that '[n]o judge of any court who tried a case without a jury in which a new trial is granted, or in which the judgment is reversed by the Supreme Court, may again try the case. . . .' Given the legislature's expressed preference that retrials not take place before the same judge who previously tried the case, we decline to conclude, without any supporting statutory evidence, that the legislature intended, as a jurisdictional matter, to preclude, in workers' compensation cases, the very practice that it endorsed in civil and criminal cases." *Cantoni* v. *Xerox Corp.*, supra, 251 Conn. 166–67.

We conclude that the board's statutory authority over appeals from decisions of commissioners includes the authority to remand a case for a new hearing before a different commissioner. As discussed, § 31-301 (c) confers broad authority on the board over appeals of decisions by the commissioner. An appellate tribunal may, where appropriate, remand a case for a new trial. See *State* v. *Wilson*, supra, 199 Conn. 446; *Koper* v. *Koper*, supra, 17 Conn. App. 484. "The board sits as an appellate tribunal reviewing the decision of the commissioner." *Paternostro* v. *Arborio Corp.*, supra, 56 Conn. App. 218. We conclude that when inconsistent decisions

by a trial commissioner would put the board in the untenable position of retrying the facts, which it may not do, the board may exercise its authority to remand the case for a new hearing before a different commissioner.

In this case, the record before the board included the commissioner's November 16, 2000 finding, which denied temporary total benefits, and the commissioner's September 16, 2002 articulation, which awarded temporary total benefits. By affirming the articulation's findings and award, the board rejected the commissioner's previous findings and denial of temporary total disability benefits. Even if the board had reversed the improper articulation, it still would have faced the inconsistent findings in the previous decision. It is unclear how the board could select the findings that represented the proper resolution of the case without retrying the facts. In this situation, the proper remedy was to reverse the inconsistent findings and to remand the case to a different commissioner for a formal hearing on the temporary total disability benefits issue.

Furthermore, remanding this case to the same commissioner for a third decision "would appear to be a mere exercise in 'going through the motions' [and] the claimant would not emerge from these proceedings with the feeling that he has had a meaningful day in court. That is a result we seek to avoid." *Conetta* v. *Stamford*, 16 Conn. Workers' Comp. Rev. Op. 228, 230, No. 3231 CRB-7-95-12 (June 23, 1997), appeal dismissed, 246 Conn. 281, 715 A.2d 756 (1998) (dismissing as moot claim challenging board's decision to remand for new hearing before different commissioner because no relief available, as original commissioner had resigned).

The decision of the workers' compensation review board is reversed and the case is remanded to the board with direction to reverse the commissioner's September

16, 2002 articulated decision and the commissioner's November 16, 2000 findings regarding temporary total disability, and to remand the case to a new commissioner for a formal hearing limited to the issue of whether the plaintiff is entitled to temporary total disability benefits.

In this opinion the other judges concurred.